Filed 7/20/26  Obiora v. PWxyz CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| NOEL A. OBIORA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PWxyz, LLC,<br><br>    Defendant and Respondent. | B345075<br><br>(Los Angeles County Super. Ct. No. 24STCV03117) |

APPEAL from an order of the Superior Court of the County of Los Angeles, Maureen Duffy-Lewis, Judge.  Affirmed.

Noel A. Obiora, self-represented litigant, for Plaintiff and Appellant.

Milord Law Group, Milord Arsen Keshishian and Shannon M. Skrzynski, for Defendant and Respondent.

# I. INTRODUCTION

Plaintiff Noel Obiora appeals from the trial court's order striking his cause of action for declaratory relief against defendant[1] pursuant to the anti-SLAPP statute (Civ. Code Proc., § 425.16)[2]. We affirm.

# II. BACKGROUND

## A. *Complaint*

On September 9, 2024, plaintiff filed a first amended complaint against Rare Bird Books, LLC. (Rare Bird), Robert Tyson Cornell (Cornell), and defendant.[3] As relevant to the single cause of action that is the subject of this appeal, a claim for declaratory relief, plaintiff alleged that Rare Bird, Cornell, and defendant conspired to publish a negative review of plaintiff's first novel (the book) prior to the book's publication.

---

[1] Defendant is PWxyz LLC, the publisher of the trade magazine Publishers Weekly.

[2] Further statutory references are to the Code of Civil Procedure unless otherwise stated. "An anti-SLAPP motion presents a means by which a defendant, sued for conduct in furtherance of the constitutional right of petition or free speech, can require a plaintiff to establish that there is a probability of prevailing on the claim or face early dismissal of the action." (*Spencer v. Mowat* (2020) 46 Cal.App.5th 1024, 1031 (*Spencer*).)

[3] Cornell was the managing member of Rare Bird. He and Rare Bird are not parties to this appeal.

In June 2020, plaintiff and Cornell negotiated a deal for the publication of the book.  The parties entered into a written contract pursuant to which plaintiff granted Rare Bird exclusive publishing rights and Rare Bird agreed to provide various publishing services and thereafter account to plaintiff a portion of receipts.

In April 2021, prior to the publication of the book, Rare Bird, Cornell, and defendant conspired to discredit the book by having defendant "publish a debilitating smear review of the [b]ook" in its "primary trade magazine, the Publishers Weekly Magazine/Online Review, from which bookstores determined whether to place orders to carry the [b]ook in stores."  On April 13, 2021, defendant published an anonymous "smear review" of the book calling it "slow-moving, unconvincing" with "[u]nnecessary melodrama," "courtroom scenes [that] don't ring true, and run-on sentences are a minus ... ."  The review incorrectly stated the book had 320 pages when in fact it had 384 pages.

Defendant "knew or should have known that the review it was engaged to publish was a smear campaign orchestrated by … Rare Bird …, … Cornell and their agents to discourage bookstores from carrying the [b]ook in order to ensure that most, if not all, sales are directed online to Rare Bird … and other online market places that rely solely and directly on Rare Bird … and to limit if not reduce the amount of initial investment in printing and freight that Rare Bird … would have to make under the [b]ook [c]ontract."

On June 18, 2021, a former judge in the state of Illinois published a positive review of the book that stated plaintiff "shows great promise as a writer" although "he may have made a

few mistakes along the way … ."  Ultimately, the book did not sell well.

B.    *The Anti-SLAPP Motion*[4]

On October 15, 2024, defendant filed a special motion to strike the declaratory relief claim pursuant to the anti-SLAPP statute (§ 425.16, subd. (e)(4)) on the grounds that it arose from the protected activity of publishing a book review and plaintiff could not demonstrate a probability of prevailing at trial on his claim.[5]

1.    Pritzkat Declaration

In support of its motion to strike, defendant submitted the declaration of its chief operating officer, Carl Pritzkat, who testified as follows.  "Because of [defendant's] unquestionable editorial integrity, it remains the most important trade publication for the book publishing industry."  Defendant "was never provided any instructions or guidance as to how to review

---

[4]    We deny plaintiff's May 12, 2026, request for judicial notice as the purported facts are premised on exhibits that were not filed in the trial court and are not necessary for our resolution of this appeal.

[5]    On October 11, 2024, defendant filed a demurrer for failure to state an actionable claim and for improperly seeking an advisory opinion through a cause of action styled as declaratory relief.  (§§ 430.10, subd. (e), 1060).  On January 29, 2025, after the trial court ruled on the special motion to strike, it vacated the hearing on the demurrer as moot.

the [b]ook, either negatively or positively, or to point out 'run-on' sentences in the [b]ook."

Rare Bird uploaded a copy of the book to defendant's review portal on March 22, 2021.  The submission form included a press release pdf document, which contained the information that the book was 320 pages in length.  "There was no other correspondence with the [b]ook submission."  No one from defendant communicated with Rare Bird about plaintiff or the book.

2.    Cornell Declaration

Defendant also submitted the declaration of Cornell, who testified as follows.  "Other than uploading the [b]ook, no one at Rare Bird has at any time communicated with [defendant] regarding the [b]ook or Rare Bird's agreement with [plaintiff]."  The copy of the book that Rare Bird uploaded to defendant contained 384 pages.  It is not uncommon for book reviewers to use the cataloging information for the page count; the cataloging information is an estimate created in "[t]he early process" before "proofing and layout design."

3.    Attorney Declaration

Defendant submitted the declaration of its attorney who provided 23 documents—including articles, advertisements, and promotional materials for the book—to demonstrate that plaintiff had publicized his work.

C.    *Opposition to Motion to Strike*

On January 14, 2025, plaintiff submitted his opposition to the motion to strike, arguing that even if the publication of the book review was protected conduct, the cause of action against defendant also alleged unprotected activity "sounding in negligence and fraudulent conceit before the [b]ook review was published, and as such were not protected activity."  Plaintiff also argued that if the court determined that defendant's wrongful conduct was protected under prong one, his claim nevertheless had the requisite minimal merit to satisfy prong two of the anti-SLAPP analysis.

To support his merits argument, plaintiff submitted his own declaration stating that Cornell sent him an April 4, 2021, email asking for his final approval of the book[6], which was to be released on June 21, 2021.  He provided that email, a photocopy of the tracking label of the book, and information which explained the tracking code showed the galley was printed on April 6, 2021.

Plaintiff provided an "excerpt of [defendant's] review practices from [defendant's] website, under a section titled: About Us" that stated "the magazine's book review section ... [contains] advance reviews, written on the basis of early galleys of the book, published two to four months before a book's publication date." (Boldface omitted.)

---

[6]    Plaintiff argues in his opening brief that "whatever was uploaded to [defendant's] automated submission web form was not the published work."  He claims he and Rare Bird were exchanging emails as late as March 27, 2021, with "critical edits" to the book, but provided no citation to the evidence that supports that assertion.

6

D.     *Court's Ruling*

On January 29, 2025, the trial court granted the motion to strike.  The court ruled defendant met its burden to show that plaintiff sought relief based on defendant's publication of a book review, which was "protected activity under the First Amendment."  It also found plaintiff failed to meet his burden to demonstrate his claim was legally sufficient and factually substantiated.  Finally, the court explained that plaintiff's defamation allegations had no merit because he failed to show actual malice.

On March 17, 2025, plaintiff timely filed a notice of appeal.

## III.   DISCUSSION

A.     *Anti-SLAPP Statute*

"Resolution of an anti-SLAPP motion involves two steps.  First, the defendant must establish that the challenged claim arises from activity protected by section 425.16.  [Citation.]  If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.  [Our Supreme Court has] described this second step as a 'summary-judgment-like procedure.'  [Citation.]  The court does not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.  It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.  [Citation.]  '[C]laims with the requisite minimal

7

merit may proceed.' [Citation.]" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384–385, fn. omitted (*Baral*).) "Our review of the trial court's ruling on an anti-SLAPP motion, including any issues of statutory interpretation presented on appeal, is de novo. [Citations.]" (*Doe v. Ledor* (2023) 97 Cal.App.5th 731, 741.)

B.    *Prong One:  Protected Activity*

"At this first step, courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.]  The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity.  [Citation.]" (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)  "[A] claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060.)  When a plaintiff alleges a tort claim under a conspiracy theory, the court focuses on the acts which satisfy the elements of the tort, not the acts which provide evidence of participation in the conspiracy. (*Spencer, supra*, 46 Cal.App.5th at pp. 1037, 1040.)  In other words, the tortious acts the defendants allegedly conspired to commit are the acts upon which the claims are based.  (*Id.* at p. 1040.)

Plaintiff alleged that defendant conspired with others to engage in various torts.  That claim, however, was predicated on defendant's publication of a negative book review.  Plaintiff does not dispute that the publication of a book review is "conduct in

8

furtherance of the exercise of the constitutional right … of free speech in connection with a public issue or an issue of public interest" protected under section 425.16, subd. (e)(4).  (See *Moldea v. New York Times Co.* (D.C. Cir. 1994) 22 F.3d 310, 315 [adopting a "'supportable interpretation'" standard to whether to grant a book review First Amendment protection:  "a critic's interpretation must be rationally supportable by reference to the actual text he or she is evaluating"]; *Mitchell v. Twin Galaxies, LLC* (2021) 70 Cal.App.5th 207, 217 [plaintiff conceded defendant's allegedly defamatory statements were protected speech under section 425.16, subd. (e)(4)]; *Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699 [same]; *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 24 [website containing allegedly defamatory review of plastic surgeon was protected speech under section 425.16, subd. (e)(4)].)  Instead, plaintiff contends that the burden is on defendant to show that the protected activity is not merely incidental to the unprotected activity plaintiff has alleged defendant committed.[7]  (See *Baral*, *supra*, 1 Cal.5th at p. 382.)  According to plaintiff, the negative book review is evidence of defendant's participation in a conspiracy with the codefendants to commit the torts of unfair trade practices and tortious interference with prospective advantage identified in the sixth cause of action but not alleged as separate causes of action against any party.  (*Spencer*, *supra*, 46 Cal.App.5th at p. 1040 [in the context of a civil conspiracy to

---

[7]    In addition, plaintiff argues for the first time on appeal that the commercial speech exemption (§ 425.17, subd. (c)(1)) applies here to bar dismissal of the allegations against defendant. This argument is forfeited. (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 117.)

9

commit assault, battery, and public nuisance, defendants' protected activity of petitioning the city manager and text messaging was incidental to the unprotected offending conduct of the coconspirators and was offered only as evidence of defendants' membership in the conspiracy].)

Plaintiff analogizes his case to *Spencer*, *supra*, 46 Cal.App.5th 1024 and argues defendant is vicariously liable for the *unprotected* tortious acts committed by codefendants Rare Bird and Cornell because plaintiff has alleged a conspiracy. "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's activity that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.) Here, the conduct about which plaintiff complains is defendant's review of a book that was not yet approved by the author and publication of a review that plaintiff alleged was disparaging. We therefore reject plaintiff's characterization of his own cause of action as "mixed" with unprotected activity. (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 411 ["the only *acts* [defendant] has been shown to have committed were giving advice to a client and writing a letter to opposing counsel. These are unquestionably protected activities"].)

C.    *Prong Two:  Probability of Success*

"To succeed in opposing a special motion to strike, the nonmoving party must 'demonstrate both that the claim is legally sufficient and that there is sufficient evidence to establish a prima facie case with respect to the claim.' [Citation.] '[C]laims

10

with the requisite minimal merit may proceed.' [Citation.] The moving party prevails by 'defeat[ing]' the 'claim as a matter of law' [citation] in 'a summary-judgment-like procedure' [citation]." (*Olson v. Doe* (2022) 12 Cal.5th 669, 679.)

Plaintiff asserted a single cause of action against defendant for declaratory relief, alleging it "conspired [with the other defendants] to discredit the [b]ook in reviews" in its magazine before the book was published and caused plaintiff and the public harm. Section 1060 authorizes declaratory relief for an "actual controversy" relating to the rights of parties. It is designed to operate prospectively to declare future rights—not to provide redress for past wrongs. (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848.) "It serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs. In short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them. [Citation.] [¶] 'To qualify for declaratory relief, [a party] would have to demonstrate its action presented two essential elements: "(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to [the party's] rights or obligations … ."' [Citation.]" (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 909 (*Jolley*).)

There is no need for a declaration of rights when, as here, the alleged harm has already occurred. (*See Jolley, supra,* 213 Cal.App.4th at p. 909; *Travers v. Louden* (1967) 254 Cal.App.2d 926, 931.) "'If there is a controversy that calls for a declaration of rights, it is no objection that past wrongs are also to be redressed; but there is no basis for declaratory relief where only past wrongs are involved.'" (*Osseous Technologies of America, Inc. v. DiscoveryOrtho Partners LLC* (2010) 191 Cal.App.4th 357, 366.)

11

Plaintiff contends that his cause of action against defendant involves more than past wrongs because the book remains available for purchase and the review appears "when anyone does an online search for it or for books on subjects like it or for [plaintiff] himself." In addition, "[a]s a writer, it is inevitable that [defendant] and [plaintiff] will meet again and engage in a similar transaction." We do not agree that these factual statements, if true, create a continuing relationship between plaintiff and defendant such that an action for declaratory relief alleging defendant conspired to commit the torts of defamation, unfair competition, unfair and deceptive trade practices, and tortious interference with a prospective economic relationship is appropriate here. (Compare *Warren v. Kaiser Foundation Health Plan, Inc*. (1975) 47 Cal.App.3d 678, 684 [a declaratory relief cause of action can be appropriate where "a relationship between the parties continues so that a declaration may guide their future conduct"].)

If plaintiff has a fully matured cause of action he "must seek the remedy of damages, and not pursue a declaratory relief claim." (*Canova v. Trustees of Imperial Irrigation Dist. Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1497.) The cause of action for declaratory relief therefore is legally insufficient. (§ 425.16, subd. (b)(1).)

## IV.  DISPOSITION

The order is affirmed.  Defendant is entitled to its costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



KIM (D.), J.



We concur:




BAKER, Acting P. J.




MOOR, J.

13